**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-24-00031-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Forest Service, et al., | |
| Defendants. | |

Pending before the Court is Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 28). Plaintiffs have filed a response, (Doc. 35), Defendants have filed a reply, (Doc. 39), Plaintiffs have filed a sur-reply, (Doc. 43), and Defendants filed a sur-sur-reply, (Doc. 44). Also pending before the Court is proposed intervenor American Wild Horse Preservation Campaign's ("Intervenor") motion to intervene. (Doc. 18). The Court now rules.

**I.     BACKGROUND**

Plaintiffs assert that it is Defendants' right and obligation to protect endangered species from the encroachment of wild horses, considered to be unauthorized livestock, in the Lower Salt River region of the Tonto National Forest. (Doc. 17-1 at 11–12). Plaintiffs previously brought suit under the National Environmental Policy Act ("NEPA") against Defendants for the following actions Defendants allegedly took: (1) entering into an Intergovernmental Agreement with the State of Arizona in 2017; and (2) "approving and implementing" a Salt River Horse Management Plan in 2023. *See Ctr. for Biological*

*Diversity v. U.S. Forest Serv.*, No. CV-23-00715-PHX-JAT, 2023 WL 7166544 (D. Ariz. Oct. 31, 2023). This Court initially dismissed Plaintiffs' previous claims on several specified grounds but gave Plaintiffs leave to amend their complaint. *Id.* at 6. Because Plaintiffs never amended their complaint, the suit was dismissed with prejudice for lack of federal subject matter jurisdiction on December 6, 2023. (CV 23-715 at Doc. 26).

Plaintiffs now take issue with a Challenge Cost Share Agreement ("CSA") between the Arizona Department of Agriculture ("AZDA") and the United States Department of Agriculture ("USDA"), Forest Service, and Tonto National Forest, entered into on September 10, 2023. (Doc. 35 at 1; *see also* Doc. 28-1 (the CSA at issue) at 2, 15).[1] The purpose of the agreement was "to provide by reimbursement funding for half the salary of the Salt River Horse Liaison to be employed by the AZDA." (Doc. 28-1 at 2). The Liaison position "would have various responsibilities, as determined by the AZDA, related to the protection and management of the Salt River horse herd." (*Id.*). Plaintiffs allege that Defendants' agreement to continue funding the Liaison position would have "obvious environmental impacts" and that Defendants entered into the agreement without conducting an environmental analysis or consulting with the United States Fish and Wildlife Service ("FWS"). (Doc. 17-1 at 15–17).

Without more stringent horse management, Plaintiffs allege, "severe ongoing harm is occurring, including to the rare and endangered wildlife that depends upon lower Salt River area." (*Id.* at 17). Plaintiffs point to several harmed species, including three species listed in the Endangered Species Act ("ESA"): the Yellow-billed Cuckoo, Southwestern Willow Flycatcher, and Yuma Ridgway's Rail. (*Id.*).

Plaintiffs thus bring this suit under NEPA and the ESA, seeking a declaratory judgment and injunctive relief. (*See generally* Doc. 17-1). Specifically, under NEPA, Plaintiffs' operative complaint alleges that Defendants' approval of the CSA constitutes major federal action that required Defendants to conduct an environmental analysis

---

[1] The CSA was incorporated by reference into Plaintiffs' operative complaint; as such, the Court appropriately considers it for all purposes at the motion to dismiss stage. *See infra* Section II.C.

- 2 -

pursuant to NEPA's requirements. (*Id.* at 18). Plaintiffs' operative complaint next alleges that Defendants' approval of the CSA violated ESA Section 7(a)(2) because the CSA may affect ESA-listed species and Defendants approved the CSA without consulting with FWS. (*Id.* at 19). Finally, Plaintiffs allege that Defendants have violated ESA Section 7(a)(1) because Defendants have "failed to utilize [their] authority to carry out programs for the conservation of [the three ESA-listed species]," and the CSA "continues [Defendants'] failure to meet [their] affirmative conservation duty." (*Id.*).

## II. LEGAL STANDARD

### A. Standing

For a court to hear a plaintiff's case, the plaintiff first must establish standing and satisfy other related justiciability requirements, including showing that a case is not moot. *See Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 617 (9th Cir. 1999). A plaintiff has the burden of establishing the three elements of Article III standing, which are the following: (1) they have suffered an injury in fact that is concrete and particularized; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision. *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiffs asserting a procedural injury must show "that the procedures in question are designed to protect some threatened concrete interest of [theirs] that is the ultimate basis of [their] standing." *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 969 (9th Cir. 2003) (citation omitted).

Once a plaintiff establishes a procedural injury, the burden for the last two prongs of the standing inquiry lessens. *Salmon Spawning*, 545 F.3d at 1226. "Plaintiffs alleging procedural injury 'must show only that they have a procedural right that, if exercised, *could* protect their concrete interests.'" *Id.* (emphasis in original) (quoting *Defenders of Wildlife v. U.S. E.P.A.*, 420 F.3d 946, 957 (9th Cir. 2005)).

### B. Rule 12(b)(1) Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and can thus only hear those cases

that the Constitution and Congress have authorized them to adjudicate—namely, cases involving diversity of citizenship, a federal question, or cases to which the United States is a party. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a case lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Accordingly, on a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff must demonstrate that subject matter jurisdiction exists to defeat dismissal. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 210 (9th Cir. 1989) (citations omitted). The party opposing the motion then must present "affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* In sum, the court does not abuse its discretion by looking to extra-pleading material, even if it does so to resolve factual disputes, when considering a Rule 12(b)(1) motion to dismiss. *Id.* (citing *Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). As a general rule, the United States may not be sued unless it has waived its sovereign immunity. *Bramwell v. U.S. Bureau of Prisons*, 348 F.3d 804, 806 (9th Cir. 2003). Accordingly, unless the United States consents to be sued, the Court lacks subject matter jurisdiction over claims against the federal government. *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

### C. Rule 12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a complaint to contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A defendant can test if a plaintiff has met the requirements of Rule 8(a) by filing a motion to dismiss for "failure to state a claim on which relief can be

granted" under Rule 12(b)(6).

To decide a 12(b)(6) motion, the Court generally focuses on what the plaintiff has written in the complaint. 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 1357* (3d ed. 2004 & Supp. 2022). This is because a Court usually cannot consider anything outside the complaint without transforming the motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 56. There are two recognized exceptions, however, in which a court may consider evidence otherwise outside of the complaint without converting the motion: (1) evidence that the court has judicially noticed, and (2) evidence incorporated, either literally or by reference, into the plaintiff's complaint. *Lee v. City of L.A.*, 250 F. 3d 668, 688–89 (9th Cir. 2001).

In deciding whether a complaint will survive a 12(b)(6) motion, the Court does not need to accept a complaint's legal conclusions, but it does accept as true all the complaint's factual allegations, i.e., the plaintiff's factual description of what happened. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, the Court must interpret the complaint's allegations "in the light most favorable to the plaintiff." *Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). However, "the court need not accept as true allegations that contradict facts which may be judicially noticed." *Westlands Water Dist. v. U.S., Dept. of Interior, Bureau of Reclamation*, 805 F. Supp. 1503, 1506 (E.D. Cal. 1992) (citing *Mullis v. U.S. Bankruptcy Ct.*, 828 F. 2d 1385, 1388 (9th Cir. 1987)). The Court similarly is not required to accept as true allegations that contradict documents that are incorporated into the complaint. *See Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.*, 661 F. Supp. 2d 1076, 1083 (D. Ariz. 2009).

A complaint will be dismissed for failure to state a claim if it lacks either "a cognizable legal theory or . . . sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To allege sufficient facts under a cognizable legal theory, a complaint must contain factual allegations from which the court can reasonably conclude that the plaintiff is not just possibly entitled to

relief, but plausibly entitled to relief. *See Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Standing

Defendants first argue that Plaintiffs have failed to establish standing because Plaintiffs fail to meet the causation and redressability prongs of the standing analysis for both their NEPA and ESA claims. (Doc. 28 at 14).[2] Specifically, Defendants argue that "Plaintiffs' NEPA and ESA claims fail[] to meet the causation requirement because the Salt River horses currently exist pursuant to the State's policy, legislation, and management plan, which the State developed pursuant to their legislation." (*Id.* at 15). Defendants further argue that the CSA at issue "did not cause or change the State's action," nor did it "control or authorize AZDA's management of the horses." (*Id.*). Finally, Defendants argue that the presence of the horses is not "fairly traceable" to Defendants' partial funding of a State Liaison because the facts pleaded do not indicate that AZDA would change anything about its current policy toward the horses if Defendants ceased funding the State Liaison. (*Id.* at 16–17).

Plaintiffs first point out that Defendants' arguments regarding standing fail to acknowledge Plaintiffs' ESA Section 7(a)(1) claim, which "contends that [Defendants have] an affirmative duty to address the ongoing harm to ESA-listed species of interest to Plaintiffs." (Doc. 35 at 26). Plaintiffs further argue that causation and redressability are met because "ESA or NEPA analysis *could* have resulted in a Forest Service decision to impose conditions on funding of AZDA management that reduce the size of the horse herd." (*Id.* (emphasis in original)). Plaintiffs assert that uncertainty as to whether the analysis would have benefitted Plaintiffs does not defeat standing. (*Id.* at 27).

#### i. NEPA Claim

To assess Plaintiffs' standing regarding Plaintiffs' NEPA claim, the Court must consider: (1) whether Defendants' approval of the CSA caused the alleged harm to the Lower Salt River area and (2) whether the Court ordering Defendants to perform NEPA

---

[2] As discussed below, Plaintiffs actually have 2 separate ESA claims.

- 6 -

analysis would provide redress for the alleged harm to the Lower Salt River region. Like the previous case between these parties, the Court carefully separates its standing inquiry from the inquiry on the merits. In this instance, like before, Plaintiffs have shown (speculatively) that if Defendants had performed a NEPA analysis, they *may* have chosen not to continue partially funding the Liaison position or *may* even have wished to alter conditions of the funding.

However, Plaintiffs have not pointed to any evidence that the AZDA would have altered any aspect of its horse management in light of a discontinuation or alteration to conditions of funding. In the context of the NEPA claim, the harm alleged (overpopulation of horses in the Lower Salt River area) is caused by the manner in which the population has been managed. Thus, without evidence that agreeing to fund half of the salary of one Liaison position had any impact on AZDA's management of the horse population, the causation element of the standing inquiry is not met, even under the relaxed standards accompanying an alleged procedural injury. Relatedly, absent any evidence that AZDA would change its management plan (in a manner that would mitigate overpopulation of horses) without the Liaison position funding, Plaintiffs have not shown that ordering NEPA analysis would redress the harm Plaintiffs allege.[3]

A comparable situation arose in *Salmon Spawning & Recovery Alliance v. Gutierrez*, wherein the Ninth Circuit Court of Appeals stated the following:

> The excessive harvesting permitted under the Treaty is not fairly traceable to the United States' failure to withdraw from the Treaty. If the United States withdrew, the harvesting of listed species would arguably increase, because the Treaty set abundance-based limits on the Canadians' take. The over-harvesting is also not fairly traceable to the agencies' failure to ask the Canadians to take additional conservation measures. Although the Canadians, if asked, might agree to require a reduction in their fisheries' take, they could also refuse to accommodate the United States' request.

---

[3] Plaintiffs argue that this point is irrelevant and add that the CSA by its own terms "provid[es] assurance that the AZDA is devoting at least one full-time employee to work on management of the Salt River horse herd." (Doc. 35 at 20 n.11). The language from the CSA to which Plaintiffs cite demonstrates that, if anything, removing the funding of the Liaison position could result in even less satisfactory horse management (from Plaintiffs' perspective). Thus, the Court concludes that there is no evidence presented that the funding causes the alleged harm and no evidence that removing the funding would redress the harm.

545 F.3d 1220, 1228 (9th Cir. 2008). Here, similarly, even if performing a NEPA analysis caused Defendants to seek to impose further restrictions on the AZDA's horse management practices, the AZDA independently could have decided not to accept such conditional funding. Plaintiffs therefore lack standing to challenge the CSA under NEPA, and the Court grants Defendants' motion with respect to Plaintiffs' NEPA claim.

### ii. ESA Section 7(a)(1) Claim

The Court's analysis of standing under Section 7(a)(1) of the ESA again separates the elements of standing from the merits of Plaintiffs' claims. Regarding injury in their ESA claims, Plaintiffs allege that ongoing harm is being done to three listed endangered species: the Yellow-billed Cuckoo, Southwestern Willow Flycatcher, and Yuma Ridgway's Rail. Regarding causation, the failures Plaintiffs allege occurred—namely, that Defendants have failed to take conservation measures for the three listed species—establishes causation, especially under the more relaxed standards for a procedural injury. Similarly, Plaintiffs have sufficiently shown that taking affirmative conservation measures for the three listed species has a reasonable probability of redressing the harm Plaintiffs allege. Thus, the Court concludes that Plaintiffs have at minimum established standing under the three-prong test, and the Court will continue its analysis of Plaintiffs' Section 7(a)(1) claim to subject matter jurisdiction.

### iii. ESA Section 7(a)(2) Claim

The Court analyzes Plaintiffs' ESA Section 7(a)(2) claim again carefully answering the questions of whether (1) lack of consultation under ESA Section 7(a)(2) potentially caused the harm Plaintiffs allege and (2) consultation under ESA Section 7(a)(2) has a reasonable probability of redressing the harm Plaintiffs allege—not whether Defendants *should* have acted pursuant to ESA Section 7(a)(2). For the purposes of Plaintiffs' ESA claims, as discussed above, the relevant harm alleged is the harm to the three listed endangered species.

The Court encounters issues with Plaintiffs' Section 7(a)(2) claim similar to the issues encountered with Plaintiffs' NEPA claim. Plaintiffs do not draw a sufficient causal

connection between (1) Defendants' funding or lack thereof (or conditions on funding or lack thereof) and (2) the AZDA's management of the affected area. If Defendants consulted the FWS pursuant to Section 7(a)(2), Defendants may have withheld funding or sought to further condition the funding. However, this fact does not render causation and redressability met; it is unclear that the AZDA would have done anything different absent the funding or would have accepted funding accompanied by additional conditions. For these reasons, Plaintiffs' ESA Section 7(a)(2) claims fail for lack of standing.

### B. Rule 12(b)(1) Subject Matter Jurisdiction

Because the Court has already granted Defendants' motion with respect to Plaintiffs' NEPA claim and Plaintiffs' ESA Section 7(a)(2) claim for lack of standing, the Court addresses just the ESA Section 7(a)(1) claim in its analysis of subject matter jurisdiction.

Plaintiffs bring their Section 7(a)(1) claim under the applicable citizen-suit statute, which provides, in relevant part, the following:

> (1) Except as provided in paragraph (2) of this subsection any person may commence a civil suit on his own behalf—
> (A) to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof.

16 U.S.C. § 1540(g)(1)(A); (*see also* Doc. 35 at 16 (quoting this particular provision of the citizen-suit statute)).

This Court thus possesses subject matter jurisdiction over Plaintiffs' Section 7(a)(1) claim if Plaintiffs properly allege a violation of the duty imposed by Section 7(a)(1). *See Pyramid Lake Paiute Tribe of Indians v. U.S. Dept. of Navy*, 898 F.2d 1410, 1416–18 (9th Cir. 1990). The relevant section creates the following affirmative duty:

> (1) The Secretary shall review other programs administered by him and utilize such programs in furtherance of the purposes of this chapter. All other Federal agencies shall, in consultation with and with the assistance of the Secretary, utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species listed pursuant to section 1533 of this title.

16 U.S.C. § 1536(a)(1).

Plaintiffs' complaint alleges that "[t]he Forest Service is also in violation of ESA Section 7(a)(1)'s affirmative conservation duty because the agency has failed to utilize its authority to carry out programs for the conservation of the yellow-billed cuckoo, southwestern flycatcher, and Yuma Ridgway's rail." (Doc. 17-1 at 19). Defendants do not appear to dispute that this allegation is sufficient such that Defendants waive sovereign immunity for purposes of subject matter jurisdiction. As such, the Court considers the parties' arguments on Defendants' Rule 12(b)(6) motion.

### C. Rule 12(b)(6) Failure to State a Claim

Plaintiffs first argue that because Defendants do not raise any argument related to Plaintiffs' Section 7(a)(1) claim, Defendants have waived any such arguments, citing an appellate case. (Doc. 35 at 9–10). However, because the Court granted Plaintiffs a procedural opportunity to address Defendants' Section 7(a)(1) arguments, and because Defendants could later move under Rule 12(c), the Court will consider Defendants' arguments. Additionally, although the Court generally cannot consider evidence outside the pleadings when deciding a Rule 12(b)(6) motion, the Court will take judicial notice of the December 2023 Tonto National Forest Land Management Plan and accompanying public documents; and, thus, consider the documents in deciding the pending motion. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[Courts] may take judicial notice of court filings and other matters of public record."); *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.").

Defendants assert that although they have an affirmative duty under Section 7(a)(1), they maintain discretion in deciding *how* to fulfill their duty under Section 7(a)(1). (Doc. 36 at 11). Defendants thus point to their December 2023 Tonto National Forest Land Management Plan ("LMP"), which the FWS opined "was likely to result in net beneficial effects to federally listed species in the Tonto National Forest." (*Id.* at 12).

Courts within the Ninth Circuit have consistently interpreted Ninth Circuit Court of Appeals precedent regarding ESA Section 7(a)(1) claims in the following manner:

> In *Pyramid Lake Paiute Tribe of Indians v. United States Dept. of Navy*, the Ninth Circuit observed that federal agencies have "affirmative obligations" to protect listed species under § 7(a)(1). 898 F.2d 1410, 1417 (9th Cir. 1990) (citing *Carson–Truckee Water Conservancy Dist. v. Clark*, 741 F.2d 257, 262 n.5 (9th Cir. 1984)). However, the court also recognized that an expansive interpretation of § 7(a)(1) would "divest an agency of virtually all discretion in deciding how to fulfill its duty to conserve." *Pyramid Lake Paiute Tribe of Indians*, 898 F.2d at 1418. Under *Pyramid Lake*, an agency has broad discretion to carry out its obligations under section 7(a)(1) so long as its actions satisfy the ESA's general prohibition against jeopardizing listed species.

*San Francisco Baykeeper v. U.S. Army Corps. of Eng'rs*, 219 F. Supp. 2d 1001, 1026 (N.D. Cal. 2002).

The Court first notes that Plaintiffs' argument that Defendants' approval of the CSA related to horse management constitutes a major federal action directly contradicts their subsequent argument that Defendants have failed entirely to take action regarding the horses' impact on the ESA-listed species. Additionally, the parties do not dispute that the LMP exists, and the parties similarly do not dispute that the LMP and accompanying FWS biological opinion contemplate preservation of the three ESA-listed species at issue. The parties simply dispute whether a plan placing affirmative constraints on future projects "counts" under Section 7(a)(1). The Court thus resolves Defendants' Rule 12(b)(6) motion on this basis.

Plaintiffs argue that the LMP is not a "program" within the meaning of Section 7(a)(1) because "[a]t most, it guides [Defendants'] future project level actions." (Doc. 43 at 5 (emphasis omitted)). Plaintiffs further argue that because the LMP represents some guidance for some future action, and not current, binding action that Defendants are taking/must take, the LMP (and accompanying FWS opinion) cannot be considered Section 7(a)(1) compliance. (*Id.* at 5–6). Defendants assert that the LMP is in fact binding on Defendants because failure to comply is a violation of the National Forest Management Act ("NFMA"). (Doc. 44 at 2). Defendants further state that the LMP "is a plan with

1  binding effects on how resources in the Tonto Forest are managed and conserved, and the
2  benefits accrue to the species with every project that must be implemented pursuant to
3  [LMP] standards." (*Id.* at 3).

4  The Court agrees with Defendants that the LMP indeed "counts" as action for
5  purposes of Section 7(a)(1). Defendants are certainly bound by the NFMA to comply with
6  their own LMP. *See, e.g., All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105,
7  1109–10 (9th Cir. 2018). As noted above, the LMP Record of Decision's own language
8  states that the FWS opined that the LMP "is not likely to jeopardize the continued existence
9  of" the three listed species at issue, and indeed "is likely to result in net beneficial effects
10 to federally-listed species."[4] As such, the LMP carries out Defendants' affirmative
11 discretionary obligation under ESA Section 7(a)(1) regarding the three listed species.

12 Even if Plaintiffs correctly characterized the plan as one that merely denotes
13 parameters for future enactment of programs, the plan nonetheless satisfies Defendants'
14 discretionary duty. *See Protect Our Water v. Flowers*, 377 F. Supp. 2d 844, 870 (E.D. Cal.
15 2004) (noting that the ESA does not mandate that particular actions be taken and holding
16 that an entity's plan stating that "[n]o activity is authorized . . . if that activity is likely to
17 jeopardize the continued existence of a threatened or endangered species" sufficiently
18 carried out duties under Section 7(a)(1)). The judicially-noticed documents thus
19 demonstrate that Plaintiffs have failed to state a claim under ESA Section 7(a)(1) because
20 the Court need not accept as true Plaintiffs' allegations that are directly contradicted by the
21 documents. *See Westlands Water Dist.*, 805 F. Supp. at 1506. Therefore, dismissal of this
22 claim is also appropriate.

23 The Court of Appeals has instructed that when this Court dismisses based on Rule
24 12(b)(6), the Court should sua sponte grant leave to amend unless amendment would be
25 futile. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th
26 Cir. 1986); *Cf. Akhtar v. Mesa,* 698 F.3d 1202, 1212–1213 (9th Cir. 2012).

---

[4] USDA, Forest Service, Record of Decision: Tonto National Forest: Revised Land Management Plan, at 47–48 (Dec. 2023), https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fseprd1155227.pdf [https://perma.cc/9RCK-2MQR].

Here, the portion of the complaint dismissed for failure to state a claim cannot be cured by the allegation of additional facts. Specifically, as discussed above, the Court dismissed based on taking judicial notice of public documents. No allegations of further facts could change the content, nor this Court's reading, of these documents. Therefore, leave to amend would be futile.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion to dismiss, (Doc. 28), is **GRANTED**. This case is dismissed with prejudice. The Clerk of the Court shall enter judgment consistent with this Order.

**IT IS FURTHER ORDERED** that Intervenor's motion to intervene, (Doc. 18), is **DENIED** as moot.

Dated this 26th day of August, 2024.

_____
James A. Teilborg
Senior United States District Judge