**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-24-00031-PHX-JAT |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Forest Service, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' Motion to Alter or Amend Judgment ("Motion"). (Doc. 59). The Court now rules on the Motion.

**I.    Background**

The underlying litigation centers on a Challenge Cost Share Agreement ("CSA") between the Arizona Department of Agriculture ("AZDA") and the United States Department of Agriculture, Forest Service, Tonto National Forest ("USFS"). (Doc. 35 at 1; *see also* Doc. 28-1 (the CSA)). The purpose of the CSA "is to provide by reimbursement funding for half the salary of the Salt River Horse Liaison to be employed by AZDA." (Doc. 28-1 at 2). The Liaison position "would have various responsibilities, as determined by AZDA, related to the protection and management of the Salt River horse herd." (Doc. 28-1 at 2).

Plaintiffs alleged that Defendants entered into the CSA without conducting an environmental analysis under the National Environmental Policy Act ("NEPA")[1] or a

---

[1] Under NEPA, Plaintiffs alleged that that Defendants' approval of the CSA constitutes major federal action requiring Defendants to conduct an environmental analysis pursuant

<s>consultation under the Endangered Species Act ("ESA").[2] (*See generally* Doc. 17-1).

In an order dated August 26, 2024 ("Order"), the Court granted Defendants' Motion to Dismiss, finding that Plaintiffs lacked standing for their NEPA and ESA Section 7(a)(2) claims under Federal Rule of Civil Procedure 12(b)(1) and that Plaintiffs failed to state a claim for their ESA Section 7(a)(1) claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Doc. 45). Accordingly, the Clerk of the Court entered judgment in favor of Defendants on all claims and dismissed the case with prejudice that same day. (Doc. 46). On September 20, 2024, Plaintiffs filed the pending Motion to Alter or Amend Judgment under Federal Rule of Civil Procedure 59(e).[3] (Doc. 47). Defendants filed a Response. (Doc. 50). Plaintiffs filed a Reply. (Doc. 51).

**II.    Legal Standards**

A district court "enjoys considerable discretion in granting or denying" a Rule 59(e) motion to alter or amend its judgment. *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n. 1 (9th Cir. 1999)). "[A]mending a judgment after its entry is 'an *extraordinary* remedy which should be used sparingly.'" *Id.* (emphasis added). According to the Ninth Circuit, a court may grant a Rule 59(e) motion based on four basic grounds:

> (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law.

*Id.*

A motion to alter or amend judgment should not "be used to ask the court to rethink

---

to NEPA's requirements. (Doc. 17-1 at 18).
[2] Under the ESA, Plaintiffs alleged that Defendants' approval of the CSA violated ESA Section 7(a)(2) because the CSA may affect ESA-listed species and Defendants approved the CSA without consulting with FWS. (Doc. 17-1 at 19). Plaintiffs also alleged that Defendants violated ESA Section 7(a)(1) because Defendants "failed to utilize [their] authority to carry out programs for the conservation of [the three ESA-listed species]," and the CSA "continues [Defendants'] failure to meet [their] affirmative conservation duty." (Doc. 17-1 at 19).
[3] The Motion is timely because it was filed within 28 days of the entry of judgment. Fed. R. Civ. P. 59(e) ("A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.").

- 2 -</s>

what the court had already thought through—rightly or wrongly." *Smith v. Ryan*, No. CV-12-318-PHX-PGR, 2014 WL 2452893, at *1 (D. Ariz. June 2, 2014) (citing *United States v. Rezzonico*, 32 F. Supp. 2d 1112, 1116 (D. Ariz. 1998)). Further, "Rule 59(e) motions may not be used to reexamine the initial decision or raise arguments that were available to the party prior to the entry of judgment." *Reyes v. City of Phoenix*, No. CV-17-04741-PHX-JAT, 2018 WL 4377161, at *3 (D. Ariz. Sept. 14, 2018).

### III. Analysis

Plaintiffs argue that the Court must alter or amend its August 26, 2024 Order under Rule 59(e) because the Court "appl[ied] an incorrect legal standard[] and rel[ied] on factually inaccurate statements to conclude that Plaintiffs lack standing to bring their NEPA and ESA section 7(a)(2) claims." (Doc. 47 at 5).

### a. The Court applied the correct legal standard in requiring Plaintiffs to produce evidence.

Plaintiffs argue that the Court must amend its Order because "the Order wrongly required Plaintiffs to produce 'evidence' at the pleading stage." (Doc. 47 at 9). Plaintiffs give the following examples: "the Order required Plaintiffs to present evidence showing that (1) the Forest Service's funding 'had any impact on AZDA's management of the horse population,' and (2) Arizona 'would change its management plan (in a manner that would mitigate overpopulation of horses) without the Liaison position funding.'" (Doc. 47 at 9 (quoting Doc. 45 (the Order))). The Court interprets this as Plaintiffs arguing the Court made a "manifest error of law" under Rule 59(e).

Plaintiffs cite *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) to support their argument that they "are not obligated to produce 'evidence' at the pleading stage." (Doc. 47 at 9). In *Lujan*, the U.S. Supreme Court said that "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct *may* suffice, for on a motion to dismiss [a court should] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" 504 U.S. at 561 (emphasis added) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)).

- 3 -

### i. Legal Standard: 12(b)(1)

The Court dismissed Plaintiffs' NEPA and ESA Section 7(a)(2) claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and dismissed Plaintiffs' ESA Section 7(a)(1) claim for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (*See generally* Doc. 45). Plaintiffs only challenge the Court's conclusion regarding the NEPA and ESA Section 7(a)(2) claims dismissed under Rule 12(b)(1). (Doc. 47 at 5). Thus, the Court will consider only whether it erred in its application of the standard for considering motions to dismiss under Rule 12(b)(1).

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff must demonstrate that subject matter jurisdiction exists to defeat dismissal. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). "Article III standing is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011); *see also Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of *Article III* standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).").

"Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other *evidence* properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 210 (9th Cir. 1989) (internal citations omitted) (emphasis added). The party opposing the motion then must present "affidavits or any other *evidence* necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Id.* In sum, the court does not abuse its discretion by looking to extra-pleading material, even if it does so to resolve factual disputes, when considering a Rule 12(b)(1) motion to dismiss. *Id.* (citing *Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)).

### ii. Analysis

The Court, careful to separate its standing inquiry from the inquiry on the merits,

applied the correct legal standard in requiring Plaintiffs to produce evidence. Defendants attacked the substance of Plaintiffs' jurisdictional allegations, arguing that Plaintiffs failed to establish subject matter jurisdiction because Plaintiffs failed to meet the causation and redressability prongs of the standing analysis for both their NEPA and ESA claims.[4] (*See generally* Doc. 28). As the party opposing the motion, Plaintiffs were required to present "evidence necessary to satisfy [their] burden of establishing that the court, in fact, possesse[d] subject matter jurisdiction." *St. Clair*, 880 F.2d at 210. Plaintiffs responded that causation and redressability were met because ESA or NEPA analysis *could* have resulted in a Forest Service decision to "change the contents of" the CSA. (Doc. 35 at 26-27). But Plaintiffs did *not* allege, argue, or present evidence (1) that AZDA would have altered any aspect of its horse management if USFS decided to impose conditions on funding; (2) that AZDA's management of the horse population was in any way impacted by USFS's agreement to fund the Liaison position; or (3) that AZDA would change its management plan to mitigate overpopulation of horses without funding for the Liaison position.

On review, the Court found that Plaintiffs did not meet the causation and redressability elements of standing for Plaintiffs' NEPA and ESA Section 7(a)(2) claims. In terms of the language used in *Lujan*, the Court found Plaintiffs' general factual allegations of causation and redressability insufficient. Even presuming that those allegations embraced specific facts necessary to support the claims, Plaintiffs did not make key allegations. Because the Court did not make a manifest error of law, the Court will not alter or amend its judgment based on this theory.

---

[4] Specifically, Defendants argued that "Plaintiffs' NEPA and ESA claims fail[] to meet the causation requirement because the Salt River horses currently exist pursuant to the State's policy, legislation, and management plan, which the State developed pursuant to their legislation." (Doc. 28 at 15). Defendants further argued that the CSA at issue "did not cause or change the State's action," nor did it "control or authorize AZDA's management of the horses." (Doc. 28 at 15). Finally, Defendants argued that the presence of the horses is not "fairly traceable" to Defendants' partial funding of a State Liaison because the facts pleaded did not indicate that AZDA would change anything about its current policy toward the horses if Defendants ceased funding the State Liaison. (Doc. 28 at 16-17).

- 5 -

### b. The Court made factually accurate findings.

Plaintiffs argue that the Court made "factually inaccurate" findings in its Order. (Doc. 47 at 10). The Court interprets this as Plaintiffs arguing that the Court made a "manifest error of fact" warranting the remedy of Rule 59(e).

Plaintiffs did not present "evidence that agreeing to fund half the salary of one Liaison position had any impact on AZDA's management of the horse population." (Doc. 45 at 7). Plaintiffs argue that "the available evidence *does* show that Arizona's management of the Salt River horses is predicated on the federal involvement and funding established in the 2023 Agreement." (Doc. 47 at 10 (emphasis in original)).

Plaintiffs point to a previous Intergovernmental Agreement to support their argument that "Arizona's management of Salt River horses . . . is contingent on [] joint agreements with the U.S. Forest Service[] and [] Forest Service funding." (Doc. 47 at 10). Plaintiffs also cite statutory language from A.R.S. § 3-1491 to "imply that the State's legislation was not effective until the State entered into an agreement with the Forest Service." (Doc. 47 at 10; Doc. 50 at 8). Taken together, Plaintiffs say that "Arizona does not independently conduct or fund its Salt River horse management, and therefore the [CSA] does in fact impact AZDA's horse management." Defendants say this is an "improperly raise[d] new argument[] that could reasonably have been raised earlier . . . because [Plaintiffs] knew about the [Intergovernmental Agreement] and [the statute] [based on] their previous lawsuit against the Forest Service, filed last year in this Court." (Doc. 50 at 8). Plaintiffs claim they are not arguing any new legal theories and are not presenting new evidence because Plaintiffs cited the Intergovernmental Agreement in their opposition to the motion to dismiss. (Doc. 51 at 10).

The Court first disagrees that it made a "factual finding" in the portion of the Order quoted by Plaintiffs. Rather, the Court explained that it could not find causation or redressability because Plaintiffs did not allege, or present evidence of, necessary elements. Pointing out the absence of evidence is not the same as making a finding of fact.

Second, even if the Court made a "factual finding," it was not a manifest error of

- 6 -

fact. As detailed in the CSA, after the Intergovernmental Agreement expired, the parties "believe[d] it [] mutually beneficial to enter into a new agreement to maintain and fund the AZDA Salt River Horse Liaison position." (Doc. 28-1 at 2). To suggest that entering a mutually beneficial agreement somehow shows that Arizona's management of the Salt River horses is "contingent" on such an agreement, or "contingent" on USFS funding, is purely speculative. While Arizona is statutorily directed to "enter into an agreement . . . with the United States forest service to implement this article or to address any issue relating to the Salt River horse herd," the statute does not dictate the subject matter of the agreement. Put differently, the agreement does not have to be related to funding for the Liaison position nor does the agreement have to include federal involvement in horse management. Under the statute, Arizona and USFS could agree that USFS will not contribute funding and will not be involved in horse management.[5] It is unclear what would happen if Arizona and USFS were unable to reach a mutually beneficial agreement. Finally, it is overbroad to say that the statute was "ineffective" until Arizona entered into an agreement with USFS. Without entering into an agreement with USFS, under the statute, Arizona can "enter into an agreement with a private entity to address any issue relating to the Salt River horse herd." A.R.S. § 3-1491(F). Because the Court did not make a manifest error of fact, the Court will not alter or amend its judgment under Rule 59(e).

### c. The Court applied the correct causation and redressability standards.

Once a plaintiff establishes a procedural injury, the burden for the last two prongs of the standing inquiry lessens. *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1226 (9th Cir. 2008). "Plaintiffs alleging procedural injury 'must show only that they have a procedural right that, if exercised, *could* protect their concrete interests.'" *Id.* (emphasis in original) (quoting *Defenders of Wildlife v. U.S. E.P.A.*, 420 F.3d 946, 957 (9th Cir.

---

[5] Under the CSA, the USFS is already not involved in horse management. (Doc. 28-1 at 2 (emphasis added) ("This [Liaison] position would have various responsibilities, *as determined by AZDA*, . . ."); Doc 28-1 at 3 ("The scope of duties assigned to the Liaison shall be determined by AZDA. . .")). Additionally, the USFS provides funding "not to exceed $50,000.00." (Doc. 28-1 at 3). Such a relatively small amount of money can hardly be said to be so "determinative or coercive" that Arizona's horse management is "contingent" on that funding. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997).

2005)).

In the pending Motion, Plaintiffs agree that the Court correctly recounted the relaxed causation and redressability standards for plaintiffs asserting procedural injuries. (Doc. 47 at 7). However, Plaintiffs argue that the Court "applied a far more stringent standard" than the one stated, namely by using "would" instead of "could." (Doc. 47 at 7). The Court interprets this as Plaintiffs arguing that the Court made a "manifest error of law" that warrants relief under Rule 59(e).

The Court applied the correct standard; in the Order, the Court found that "Plaintiffs [showed] (speculatively) that if Defendants had performed a NEPA [or ESA] analysis, they *may* [or "*could*"] have chosen not to continue partially funding the Liaison position or *may* [or "*could*"] even have wished to alter conditions of the funding." (Doc. 45 at 13 (emphasis in original)). Under the relaxed standard, the Court found that Plaintiffs did not establish standing because, as conceded by Plaintiffs, for their interests to even *possibly* be protected, the state of Arizona must agree to some additional measures presented by Defendants.

The Court's usage of the term "would" was in reference to the actions of the state of Arizona, a third party to the requested government action. The relaxed standard does not extend to a third party. "Where an essential element of standing depends on the reaction of a third party to the requested government action or inaction, 'it becomes the burden of the plaintiff to adduce facts showing that those choices *have been or will be made*.'" *WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212, 1217 (9th Cir. 2023) (quoting *Center for Biological Diversity v. Export-Import Bank of the U.S.*, 894 F.3d 1005, 1012 (9th Cir. 2018) (emphasis added). As applied here, it is the burden of Plaintiffs to show that Arizona "would" change the way it manages the horses in response to USFS discontinuing or altering funding. Plaintiffs did not meet this burden. Moreover, not only is Arizona a third-party to the requested government action, but Arizona is a non-party to this case. Thus, the Court cannot accord relief directly against the state of Arizona.

While the Court could order USFS to comply with NEPA and ESA, doing so would not remedy Plaintiffs' alleged injuries *unless* the state of Arizona was bound by USFS (and

it is not).[6] Thus, not only can Plaintiffs not establish with any certainty that NEPA and ESA compliance would cause USFS to act in accordance with their interests, but they cannot establish with any certainty that *even if* USFS acted favorably, their interests would be protected *because the ultimate decision is the state of Arizona's*.

It is merely speculative[7] that Plaintiffs' injury would be redressed by a favorable decision on *two* fronts: it is first speculative that USFS would alter the conditions of its funding, and it is also speculative that the state of Arizona would change the way it manages the horse herd. Defendants agree with the Court on these points, responding that:

> Here, it is the State of Arizona that protects and manages the Salt River horses, having passed legislation to do so. The State's management of the Salt River horse population, which is the source of Plaintiffs' alleged injury, is not under the Forest Service's direction or control. . . . Even if, with NEPA analysis or ESA Section 7(a)(2) consultation, the Forest Service were to impose conditions on the partial funding for the Liaison, the State would have complete discretion on whether to accept the funding, or any conditions on that funding.

(Doc. 50 at 5-6 (internal citations omitted)).

The Court's usage of the word "would" does not negate the Court's finding that Plaintiffs cannot meet causation or redressability in this case nor does it warrant the "extraordinary remedy" of Rule 59(e). The Court will not alter or amend its judgment under Rule 59(e) based on this theory.

### d. The Court's decision is supported by Ninth Circuit caselaw.

Plaintiffs cite numerous "Ninth Circuit cases where Plaintiffs lacked standing to challenge a procedural violation" to argue that the Court's Order was "clear error." (Doc. 47 at 18). Defendants argue the Court should reject these arguments because Plaintiffs "rely on cases which they did not raise to the Court earlier." (Doc. 50 at 9). Plaintiffs respond that *Salmon Spawning* and *WildEarth Guardians*, cited in Plaintiffs' response to Defendants' motion to dismiss, are the only cases "necessary to find that Plaintiffs have

---

[6] Defendants agree: "The relaxed causation and redressability test may reach the Forest Service's action before the Court, but if the outcome of that federal action does not impact an independent action of a third party in a way that addresses Plaintiffs' alleged injury, the test is not met." (Doc. 50 at 7).
[7] "[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 540 U.S. at 561 (citing *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 43 (1976)).

standing." (Doc. 51 at 11; *Salmon Spawning*, 545 F.3d 1220 (9th Cir. 2008); *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148 (9th Cir. 2015)). Because Plaintiffs argue that *Salmon Spawning* and *WildEarth Guardians* control, and these cases were previously raised to the Court, the Court will analyze the applicability of only these cases.

### i. *Salmon Spawning*

This Court, in its Order, found *Salmon Spawning* to be "a comparable situation" and quoted a portion of the case that describes why the Ninth Circuit agreed that "the 'causal connection' put forward . . . [in district court] relie[d] on an 'attenuated chain of conjecture' insufficient to support standing."[8] 545 F.3d at 1228; Doc. 45 at 7. Plaintiffs say this was "clear error because the Order [relied] on the part of *Salmon Spawning* that addresses substantive violations rather than procedural violations." (Doc. 47 at 13). Plaintiffs are correct that the quoted portion is from a section of the *Salmon Spawning* opinion in which the court analyzes a substantive claim. However, the quoted portion is both relevant and applicable to this case for the reasons described below.

"[T]he causation and redressability requirements are 'relaxed' for procedural claims *only* in the sense that a plaintiff 'need not establish the likelihood that the agency would render a different decision after going through the proper procedural steps.'" *WildEarth Guardians v. United States Forest Serv.*, 70 F.4th 1212, 1216 (9th Cir. 2023) (emphasis added) (quoting *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the United States*, 894 F.3d 1005, 1012 (9th Cir. 2018)); *see also Lujan*, 504 U.S. at 572 n.7. For both procedural and substantive claims, "the causal connection put forward for standing purposes cannot be too speculative, or rely on conjecture about the behavior of other parties." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1152 (9th Cir. 2000). Because the standard

---

[8] The portion that the Court quoted is as follows:
> The excessive harvesting permitted under the Treaty is not fairly traceable to the United States' failure to withdraw from the Treaty. If the United States withdrew, the harvesting of listed species would arguably increase, because the Treaty set abundance-based limits on the Canadians' take. The over-harvesting is also not fairly traceable to the agencies' failure to ask the Canadians to take additional conservation measures. Although the Canadians, if asked, might agree to require a reduction in their fisheries' take, they could also refuse to accommodate the United States' request.

545 F.3d at 1228.

- 10 -

1    for "causal connection" does not differ between procedural and substantive claims, the
2    quoted portion is relevant and applicable. While Plaintiffs are not required to establish the
3    likelihood that USFS would render a different decision about the Liaison position funding
4    after going through the proper procedural steps, Plaintiffs *are* required to put forth a causal
5    connection that is not too speculative and that does not rely on conjecture about the
6    behavior of other parties. As exhaustively discussed, Plaintiffs' causal connection theory
7    is insufficient because it is too speculative and relies on conjecture about the behavior of
8    Arizona.

9    Plaintiffs also claim that the Ninth Circuit's "findings as to plaintiffs' third claim in
10   *Salmon Spawning*" support Plaintiffs' standing in this case. (Doc. 47 at 13-14). In *Salmon
11   Spawning*, the plaintiffs' third claim was that defendants "violated the procedural
12   requirements of [ESA] § 7 by failing to reinitiate consultation [on a biological opinion] in
13   light of new information." 545 F.3d at 1229. The court found that reinitiating consultation
14   could "protect[] a 'concrete threatened interest' that is the basis of [plaintiffs'] standing."
15   *Id.* The court found that "[t]he asserted injury [was] not too tenuously connected to the
16   agencies' failure to reinitiate consultation" and did not find dispositive "uncertain[y]
17   [regarding] whether reinitiation [would] ultimately benefit the groups." *Id.*

18   Here, as discussed above, the Court found that Plaintiffs' asserted injury was too
19   tenuously connected to USFS's failure to conduct an environmental analysis under NEPA
20   or a consultation under ESA. This alone distinguishes this case from *Salmon Spawning*.
21   This case is further distinguished by the added layer of uncertainty. As in *Salmon
22   Spawning*, there is uncertainty regarding whether NEPA and ESA compliance by USFS
23   would lead USFS to change its participation in the CSA. However, there is *also* uncertainty
24   regarding whether Arizona, an independent entity, would accept the terms of the USFS's
25   altered participation. Again, it is this additional layer of uncertainty that sets this case apart;
26   it is this additional layer that led this Court to find the causal connection lacking. "[E]ven
27   if performing a NEPA analysis caused Defendants to seek to impose further restrictions on
28   the AZDA's horse management practices, the AZDA independently could have decided

not to accept such conditional funding." (Doc. 45 at 8). This case does not support Plaintiffs' standing and the Court will not alter or amend its judgment.

### ii. *WildEarth Guardians*

Plaintiffs claim that *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148 (9th Cir. 2015) necessitates finding that Plaintiffs have standing. (Doc. 47 at 16-18; Doc. 51 at 3-4). The Court disagrees.

First, in *WildEarth*, the court found "a sufficient causal link" between the alleged procedural violation of NEPA and the plaintiff's injury such that the relaxed causation requirement for procedural claims was satisfied. 795 F.3d at 1155. As discussed above, here, the Court found that there is not a sufficient causal link between the USFS's alleged procedural violations of NEPA and ESA and the Plaintiffs' injuries.

Furthermore, *WildEarth* is factually distinguishable from this case: in *WildEarth*, the federal government played a much larger role. In *WildEarth*, the Department of Agriculture's Animal and Plant Health Inspection Service ("APHIS") and the Nevada Department of Wildlife "share[d] responsibility for predator damage control in Nevada" via the "Nevada Wildlife Services Program" ("NWSP"). 795 F.3d at 1152. APHIS "provide[d] significant funding, staffing, and supervision for NWSP's activities." *Id.* "Nevada [] provide[d] some funding and personnel." *Id.* The court described the NWSP as being "led by APHIS." *Id.* at 1158.

Here, under the CSA, USFS and AZDA do not share responsibility for horse management—they share *funding*. In fact, USFS does not have *any* responsibility for horse management; it is AZDA that sets the responsibilities for the Liaison position. (Doc. 28-1 at 2 (emphasis added) ("This [Liaison] position would have various responsibilities, *as determined by AZDA*, . . . ."); Doc 28-1 at 3 ("The scope of duties assigned to the Liaison shall be determined by AZDA, . . .")). Furthermore, the USFS does not provide more significant funding than AZDA (each entity provides the same amount) and USFS does not provide staffing or supervision.[9] The Court cannot say that horse management is "led" by

---

[9] Plaintiffs claim that the USFS contributes "Forest Service employees, namely a 'Range Conservationist' and 'Program Manager.'" (Doc. 47 at 18-19). The Court reviewed the

USFS. This additional case also does not support Plaintiffs' standing and the Court will not alter or amend its judgment.

### IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Plaintiffs' Motion to Alter or Amend Judgment (Doc. 47) is denied.

Dated this 18th day of November, 2024.

_____
James A. Teilborg
Senior United States District Judge

---

CSA and did not find such an agreement.